IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )   Civil Action No. 22 Civ. 5641<br>)   ECF Case |
| v. | )<br>)   **COMPLAINT**<br>) |
| MAXIMUM SECURITY NYC, INC., | )   JURY TRIAL DEMANDED<br>) |
| Defendant. | )<br>) |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, Title I of the Civil Rights Act of 1991, and the Age Discrimination in Employment Act to correct unlawful employment practices on the basis of disability and age and to provide appropriate relief to Charging Party Peter Levine, who was adversely affected by such practices.  Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission") alleges that Defendant Maximum Security NYC, Inc. ("Maximum Security") discriminated against and fired Levine because of his age and his disability, record of disability, and/or perceived disability.  As alleged with greater particularity in paragraph 15 below, after Levine suffered a heart attack on the job, Maximum Security encouraged him to retire, then denied him work during the COVID-19 pandemic and fired him, citing his age and health condition.  The Commission further alleges that Maximum Security failed to comply with statutory requirements for the maintenance of employee medical information.

1

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3); Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and Section 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

3.      Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and the ADEA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), and Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705, respectively.

4.      Defendant Maximum Security, a New York corporation headquartered in Queens County, New York, is a security firm providing services such as fire life safety directors, armed and unarmed security officers, personal security, and investigative services for commercial, residential, and other facilities in New York and New Jersey.

5. At all relevant times, Defendant has continuously been doing business in the State of New York and the City of New York, and has continuously had at least 20 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7), and under Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

7. At all relevant times, Defendant Maximum Security has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Levine filed a charge with the Commission alleging violations of the ADA and ADEA by Defendant Maximum Security.

9. On January 5, 2022, the Commission issued to Defendant Maximum Security a Letter of Determination finding reasonable cause to believe that the ADA and ADEA were violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Defendant Maximum Security to provide Maximum Security the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Maximum Security a conciliation agreement acceptable to the Commission.

12. On August 12, 2022, the Commission issued to Defendant Maximum Security a Notice of Failure of Conciliation.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

14. In or around March 2017, Maximum Security hired Levine as a Fire Life Safety Director, a position with the responsibility for, *inter alia*, assisting with evacuations and acting as a building's liaison to the Fire Department during a fire or other emergency.

15. Since at least December 2019, Defendant Maximum Security has engaged in unlawful employment practices, in violation of Section 102 of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b), (d), and in violation of Section 4 of the ADEA, 29 USC § 623(a), when Defendant discriminated against Levine in the terms and conditions of his employment and terminated his employment, because of his age and his disability, record of disability, and/or perceived disability, and failed to maintain employees' medical information separate from personnel information.

   a. Levine is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

      i. Levine has an impairment, heart disease (including heart failure, cardiomyopathy, angina, coronary artery disease, and a history of heart attack), that substantially limits major life activities, including the operation of the major bodily functions of his cardiovascular system and his heart, and his ability to perform normal levels of physical activity. For example, due to his impairment, Levine's heart is substantially limited in its ability to pump blood and Levine cannot climb one flight of stairs without shortness of breath.

4

  ii. Levine has a record of an impairment (heart disease and heart attack) that substantially limits major life activities, including the operation of the major bodily functions of his cardiovascular system and his heart.

  iii. Defendant regarded Levine as having a disability by subjecting him to adverse employment actions, including in the assignment of work and his unlawful termination, because of an actual or perceived impairment of heart disease and heart attack.

b. At all relevant times, Levine was qualified to perform the essential functions of his job as a Fire Life Safety Director, with or without a reasonable accommodation.

c. As of December 2019, Levine was age 57.

d. In December 2019, Levine suffered a heart attack while at work.

e. Levine phoned his supervisor, Account Manager Darryl Schaefer, from the hospital, and informed him of the heart attack.

f. Maximum Security requested that Levine provide a doctor's note clearing him to return to work.

g. Maximum Security maintains an email address, customerservice@maximumnyc.com. Its Vice-President/co-owner and Chief Financial Officer have access to and do check this email account.

h. On December 20, 2019, Levine emailed to Maximum Security, at the customerservice@maximumnyc.com address, a copy of a letter from his doctor stating that Levine had had "a heart attack" and clearing him to return to work in a week, with the accommodation of not working night shifts.

    i.   Levine then returned to work on a day shift schedule.

    j.   After Levine returned to work, his supervisor subjected him to discriminatory comments by phone and in person, including comments that Levine should retire at his age and in his condition, that Maximum Security did not want Levine to have another heart attack on the job, and that he should retire already, or words to that effect.  Prior to his heart attack, Levine was not subjected to comments of this nature.

    k.   Levine's supervisor was responsible for assigning Levine to work for Maximum Security's clients.  Levine typically received long-term assignments working at hotels in Manhattan.

    l.   In March 2020, Maximum Security told Levine to stop reporting to his regular assignment as a Fire Life Safety Director at a Manhattan hotel, allegedly because of lack of work during the emerging COVID-19 pandemic.

    m.  Between March 2020 and August 2020, Levine asked for work assignments from Maximum Security.

    n.   Between March 2020 and August 2020, Maximum Security did not offer Levine work, except for rare and undesirable short-term assignments, lasting approximately one or two days, that it did not expect him to accept.  For example, it offered him a short-term assignment at a homeless shelter that, it said, it did not expect him to accept due to the risks with his health condition during the pandemic.  Levine did not accept these assignments, but reiterated his willingness to work.

o. Between March 2020 and August 2020, Maximum Security continued to offer other employees, who were not disabled and/or were younger than Levine, including those with less seniority than Levine, work as Fire Life Safety Directors at typical commercial locations such as hotels.

p. On August 17, 2020, Schaefer phoned Levine and told him that the Director of Operations wanted Levine to submit a letter of resignation due to his age and to avoid Levine having another heart attack on the job.

q. During the August 17, 2020 phone call, Levine stated that he did not want to resign and asked if he would be fired if he refused to resign. Schaeffer replied "yes, you can take it as that," or words to that effect.

r. Levine refused to resign, and Maximum Security terminated his employment.

s. On August 17, 2020, Levine sent an email to Maximum Security at customerservice@maximumnyc.com, stating "This email is to confirm that on August 17, 2020 at approximately 11:49 am[,] Darryl fired me."

t. Maximum Security did not respond to Levine's August 17, 2020 email.

u. In or around September 2020, Maximum Security hired a new Fire Life Safety Director who was 26 years old and had no disability known to Maximum Security.

v. Maximum Security does not maintain its employees' medical information separately from personnel information. For example, it is Maximum Security's practice to store communications from employees' medical providers in the employees' personnel file and not in a separate file.

16. The effect of the practices complained of in paragraph 15 above has been to deprive Levine of equal employment opportunities and otherwise adversely affect his status as an employee, because of his age and/or disability, record of disability, or perceived disability.

17. The unlawful employment practices complained of in paragraph 15 above were and are intentional.

18. The unlawful employment practices complained of in paragraph 15 above were and are done with malice or with reckless indifference to the federally protected rights of Levine and other employees.

19. The unlawful employment practices complained of in paragraph 15 above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Maximum Security, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating in work assignments on the basis of age and disability, a record of disability, and/or perceived disability; terminating employees on the basis of age and disability, a record of disability, and/or perceived disability; and failing to store the medical information of its employees separately from personnel information.

B. Order Defendant Maximum Security to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities; provide equal employment opportunities for individuals 40 years of age and older; and eradicate the effects of its past and present unlawful employment practices.

  C. Order Defendant Maximum Security to make whole Levine, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Levine, with a raise to the rate of pay he would have made but for Defendant's unlawful conduct.

  D. Grant a judgment requiring Defendant Maximum Security to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Levine.

  E. Order Defendant Maximum Security to make whole Levine by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 15 above, in amounts to be determined at trial.

  F. Order Defendant Maximum Security to make whole Levine by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraph 15 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  G. Order Defendant Maximum Security to pay Levine punitive damages for its malicious and reckless conduct, as described in paragraph 15.

  H. Grant such further relief as the Court deems necessary and proper in the public interest.

  I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 21, 2022

Respectfully submitted,

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney
jeffrey.burstein@eeoc.gov

KIMBERLY CRUZ
Supervisory Trial Attorney
kimberly.cruz@eeoc.gov

/s/ Liane T. Rice
LIANE T. RICE (NY ID #4781993)
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(929) 506-5278 (telephone)
(212) 336-3623 (fax)
liane.rice@eeoc.gov