IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:22-cv-05641-PKC-PK |
| v. | ) ) | |
| MAXIMUM SECURITY NYC, INC., | ) ) | |
| Defendant. | ) ) | |

## **CONSENT DECREE**

On September 21, 2022, Plaintiff U.S. Equal Employment Opportunity Commission ("the EEOC") filed this action under Title I of the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Title I of the Civil Rights Act of 1991, and the Age Discrimination in Employment Act to correct unlawful employment practices on the basis of disability and age committed by Maximum Security, NYC. Inc. ("Maximum Security" or "Defendant") and to provide appropriate relief for Charging Party Peter A. Levine.  As alleged in the EEOC's Complaint, after Levine suffered a heart attack, Maximum Security gave him inferior job assignments, made disparaging comments, and ultimately terminated his employment because of his age and disability.

Maximum Security denies the allegations.

In the interest of resolving this matter and in consideration of the mutual promises of each Party to this Decree, the sufficiency of which is hereby acknowledged, it is agreed and **IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS**:

1

I.      **GENERAL PROVISIONS**

1.      The EEOC and Defendant desire to settle this action, and therefore do hereby stipulate and consent to entry of this Decree as final and binding between the Parties.

2.      The Decree resolves all issues that were raised in the EEOC's Complaint in the above-captioned action ("the EEOC's Complaint") and EEOC Charge of Discrimination number 520-2020-04952 ("the EEOC Charge of Discrimination"), which served as the jurisdictional prerequisite in this case.  This Decree in no way affects the EEOC's right to process any pending or future charges that may have been or will be filed against Defendant, and to commence civil actions on any such charges.

3.      The EEOC and Defendant agree that this Court has jurisdiction over the subject matter of this litigation and the Parties, that venue is proper, and that all administrative prerequisites have been met.  No Party will contest the validity of this Decree or the jurisdiction of the federal district court to enforce this Decree and its terms.

4.      This Consent Decree constitutes a full, final, and complete resolution of the claims in the EEOC's Complaint and in the EEOC Charge of Discrimination.

5.      The terms of this Decree represent the full and complete agreement of the Parties with respect to the Decree's subject matter.  The Parties agree that this Decree may be entered into without Findings of Fact and Conclusions of Law being made and entered by the Court.

6.      Before Defendant engages in any transfer of its business or its assets while this Consent Decree is in effect, it will provide written notice of this lawsuit and a copy of the EEOC's Complaint and this Decree to any potential purchaser of its business or assets, and to any potential successors, assigns, subsidiaries, or affiliates, including any entity with which

Defendant may merge or consolidate.  Defendant will provide written notice to the EEOC twenty-one (21) days before any transfer of its business or assets.

7.      This Decree may be amended in the interests of justice and fairness and to facilitate execution of this Decree's provisions.  No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing and approved or ordered by the Court.

8.      If one or more provisions of this Decree are rendered unlawful or unenforceable as a result of a legislative act or a decision by a court of competent jurisdiction, the following provision will ensure that this Decree continues to effectuate the intent of the Parties.  The provisions of this Decree that are not rendered unlawful, unenforceable, or incapable of performance as a result of such legislative act or court decision will remain in full force and effect and the Parties' responsibilities will not abate as to any and all provisions that have not been rendered unlawful or unenforceable, except to the extent that the intent of this Decree would be undermined.

9.      A breach of any term of this Decree by Defendant will be deemed a material and substantive breach of this Decree.  Nothing in this Decree will be construed to preclude the EEOC from bringing proceedings to enforce this Decree if Defendant fails to perform any of the terms contained herein.  This Decree will be construed by this Court under federal law.

10.     Each Party to this Decree bears its own attorneys' fees and costs associated with this litigation and the implementation of the Decree.

## II.    DEFINITIONS

11.     "Defendant" or "Maximum Security" refers to Defendant Maximum Security NYC, Inc., its current and former officers, directors, employees, and agents.

12.     "EEOC" refers to the U.S. Equal Employment Opportunity, an agency of the United States Government charged with the administration, interpretation, and enforcement of the ADA and ADEA.

13.     "Party" or "Parties" refers to the EEOC and Maximum Security.

14.     "Day" or "days" refers to business days and excludes weekends and holidays.

15.     "Effective Date" refers to the date this Consent Decree is entered by the Court.

## III.     NOTICES

16.     Except as otherwise provided for in this Decree, all notifications, reports, and communications to the Parties required under this Decree will be made in writing and will be sufficient as emailed, hand-delivered, or sent by certified, registered, or overnight mail to the following persons (or their designated successors).  Any Party may change such addresses by written notice to the other Parties setting forth a new address for this purpose:

For the EEOC:          Consent Decree Monitor
                       EEOC Legal Unit
                       33 Whitehall Street, 5th Floor
                       New York, NY 10004
                       decreemonitor.nydo@eeoc.gov

                       and

                       Daniel Seltzer, Trial Attorney
                       33 Whitehall Street, 5th Floor
                       New York, NY 10004
                       Daniel.Seltzer@eeoc.gov
                       T: (929) 506-5279

                       and

                       Lindsay Sfekas, Trial Attorney
                       33 Whitehall Street, 5th Floor
                       New York, NY 10004
                       Lindsay.Sfekas@eeoc.gov
                       T: 929-506-5284

For Defendant:    David F. Jasinski, Esq.
          Two Hance Avenue, Third Floor
          Tinton Falls, NJ  07724
          djasinski@jplawfirm.com
          (973) 824-9700

          and

          Erin L. Henderson, Esq.
          Two Hance Avenue, Third Floor
          Tinton Falls, NJ  07724
          ehenderson@jplawfirm.com
          (973) 824-9700

## IV. INJUNCTIVE RELIEF

### A. Injunctions

17. Defendant, its managers, officers, agents, and any other person or entity acting on behalf of Defendant, are hereby enjoined from unlawfully discriminating on the basis of age or disability in all of the following manners: (a) differential treatment in the placement of job assignments and other terms, conditions, or privileges of employment, (b) harassment of individuals because of their disability or age, and (c) termination of individuals because of their age or disability.  Defendant shall not be precluded from considering whether or not an employee or applicant can perform the essential functions of a position, determining whether the employee or applicant poses a direct threat to the safety of others under the ADA, and/or taking any action that is lawful under the ADEA.

18. Defendant, its managers, officers, agents, and any other person or entity acting on behalf of Defendant, are hereby enjoined from commingling medical records with personnel documents.

19. Defendant, its managers, officers, agents, and any other person or entity acting on behalf of Defendant, are hereby enjoined from retaliating against any employee, including but

not limited to an employee who in good faith complains of discrimination on the basis of a

protected category or opposes practices they consider to be unlawfully discriminatory, or

participates in protected activity.

**B.     Posting and Distribution of Notices**

20.     Within seven (7) days of the Effective Date of this Decree, Defendant will

conspicuously post and maintain a "Notice of Lawsuit and Resolution" (attached as Exhibit A) in

all prominent places where employee notices are posted, including the bulletin board located

near the front desk and dispatcher's desk in Defendant's main office at 36-36 33rd St, Room

#304, Long Island City, NY 11106.  Defendant will certify in writing to the EEOC within

fourteen (14) days of the Effective Date of this Decree that it has posted the Notice of Resolution

pursuant to this provision.

**C.     Non-Discrimination Policy and Complaint Procedures**

1.     Content of Non-Discrimination Policies and Procedures

21.     Within twenty (20) days of the Effective Date of this Decree, Defendant will

institute anti-discrimination policies and complaint procedures ("Anti-Discrimination Policies

and Procedures") setting forth Defendant's commitment to equal opportunity in all aspects of

employment. The Anti-Discrimination Policies and Procedures are attached to the Decree as Exhibit B.

22.    Attachment of the Policies and Procedures to this Decree is not a representation by the EEOC that Defendant has been or currently is in compliance with federal anti-discrimination laws.

2.    Issuance of Policies and Procedures

23.    Defendant will disseminate the Anti-Discrimination Policies and Procedures by: (1) Distributing in person, by mail, or by email copies to all current employees of Defendant within thirty (30) days of the Effective Date of this Decree; and (2) giving a copy to each new-hire employee of Defendant upon the employee's hire.

24.    Along with the Anti-Discrimination Policies and Procedures, Defendant will distribute a Memorandum (attached as Exhibit C to the Decree) setting forth Defendant's commitment to complying with federal anti-discrimination laws, including laws pertaining to discrimination on the basis of disability and age, and briefly summarizing the Anti-Discrimination Policies and Procedures

25.    Defendant will certify in writing to the EEOC within thirty-seven (37) days of the Effective Date of this Decree that the Anti-Discrimination Policies and Procedures and the Memorandum have been distributed to all current employees and describe the mechanism used. On an annual basis upon the anniversary of the Effective Date of this Decree, Defendant will certify in writing to the EEOC that the Anti-Discrimination Policies and Procedures and the Memorandum have been distributed to all employees hired since the previous certification and describe the mechanism used.

**D.**     **Training**

                 **1.**     <u>Initial Management Training</u>

26.     Within sixty (60) days of the Effective Date of this Decree, Defendant will provide a training program for all of its supervisory and management personnel, including personnel involved in assigning employees to client work sites.  The training will be at least ninety (90) minutes in duration.  The training will include examples of unlawful conduct and cover Defendant's Anti-Discrimination Policies and Procedures with particular emphasis on the internal complaint, the procedures for responding to complaints of discrimination, investigation, and remediation processes and an employee's right to file with the EEOC and state or local agencies.  Defendant will use a trainer and training materials approved by the EEOC.

27.     Within seventy-four (74) days of the Effective Date of this Decree, Defendant will provide the EEOC with an attendance sheet for all Initial Trainings that includes the date, the names of those in attendance, and the signatures of those in attendance, along with a current list of all employees meant to be covered by the training.

                 **2.**     <u>Annual Management Training</u>

28.     Within thirty (30) days of the anniversary of the Effective Date of this Decree, Defendant will provide a training program for all of its supervisory and management personnel, including personnel involved in assigning employees to client work sites.  The training will be at least one hour in duration.  Defendant will use a trainer and training materials approved by the EEOC.

29.     All employees attending any training session described in the above paragraph will print and sign their full names on an attendance sheet.  Within fourteen (14) days of the completion of any annual training described in the above paragraph, Defendant will provide an

attendance sheet that includes the date, the names of those in attendance, and the signatures of those in attendance, along with a current list of all employees meant to be covered by the training.

### 3.     Employee Training

30.     Within sixty (60) days of the Effective Date of this Decree and then again within sixty (60) days of the anniversary of the Effective Date of this Decree, Defendant will provide a training program for all of its non-supervisory and non-management personnel.  The training will be at least one (1) hour in duration.  The training will include examples of unlawful conduct and cover Defendant's Anti-Discrimination Policies and Procedures with particular emphasis on the internal complaint, the procedures for responding to complaints of discrimination, investigation, and remediation processes and an employee's right to file with the EEOC and state or local agencies.  Attendance will be allowed via videoconference.  Defendant will use a trainer and training materials approved by the EEOC.

31.     Within seventy-four (74) days of the Effective Date of this Decree and then the anniversary of the Effective Date of this Decree, Defendant will provide the EEOC with an attendance sheet for the employee training that includes the date, the names of those in attendance, and the signatures of those in attendance, along with a current list of all employees meant to be covered by the training.  Those attending via videoconference format will be noted and an addendum to the in-person sign in sheet will be provided indicating those who attended remotely.

## E.     Medical Records Recordkeeping Requirements

32.     Within seven (7) days of the Effective Date of this Decree, Defendant will adopt and institute policies and procedures to separately store employees' and applicants' medical

information.  Those policies and procedures are included at the end of the Anti-Discrimination

Policies and Procedures attached as Exhibit B to the Decree. Information obtained regarding the

medical condition or history of an employee or applicant must be collected on separate forms,

maintained in separate medical files, and treated as confidential medical records.  Defendant will

certify in writing to the EEOC within fourteen (14) days of the Effective Date of this Decree, that

it has instituted these policies and procedures.

**F.**     **Monitoring, Reporting, and Recordkeeping**

33.     The EEOC may monitor Defendant's compliance with this Decree through the

inspection of Defendant's records and interviews with Defendant's officers, agents, employees,

and contractors at reasonable times.  Defendant will make available for inspection and copying

any records related to this Decree upon reasonable request by the EEOC.

34.     On an annual basis beginning six months after the Effective Date of this Decree,

Defendant will provide a written report to the EEOC.  The report will include information

regarding any verbal or written complaints of age or disability discrimination from employees or

applicants, which were received, are pending, or were closed during the preceding six months.

The report will also include the name of the complainant, the name of the alleged perpetrator, a

list of each step taken by Defendant during the investigation, a summary of the complaint, the

location of the alleged conduct, the results of any investigation of the complaint, and any

remedial action taken by Defendant.

35.     Defendant agrees to maintain such records as are necessary to demonstrate its

compliance with this Decree, 29 C.F.R. §1602 *et seq.*, and 29 C.F.R. § 1627 *et seq.*, and to verify

that the reports submitted pursuant to this Decree are accurate.

**H.      Non-Admission of Liability**

36.     This Decree is not an adjudication or finding on the merits of this case and shall not be construed as an admission of any violation or liability by Defendant.

**V.     MONETARY RELIEF**

37.          Within thirty (30) days of the Effective Date of this Decree, Defendant will pay the total gross sum of Twenty-Two-Thousand-and-Five-Hundred Dollars ($22,500) to Charging Party Peter Levine.

38.     This settlement amount is designated as compensatory damages.  Defendant will send the check and IRS Form 1099 via certified mail, return receipt requested, to Levine at his address, which is to be provided to Defendant by the EEOC.  A copy of the check and the 1099 will be provided to the EEOC immediately upon their issuance.

39.     No portion of the monetary relief is attributable to or representative of any type of punitive damage claim.

40.     If the EEOC is required to issue an IRS Form 1098-F, a copy of the form should be sent to Maximum Security, Inc. NYC at the following address: 36-36 33rd St, Room #304, Long Island City, NY 11106.

41.     The EEOC has made no representations as to whether the amount paid pursuant to this settlement qualifies for a deduction under the Internal Revenue Code.  The provision of the IRS Form 1098-F by the EEOC does not indicate that the requirements to claim a deduction under the Internal Revenue Code have been met.  Any decision about a deduction pursuant to the Internal Revenue Code will be made by the IRS with no input from the EEOC.

42.     The Parties are not acting in reliance on any representations made by the EEOC regarding whether the amounts paid pursuant to this Decree qualify for a deduction under the Internal Revenue Code.

## VI.     DURATION OF DECREE

42.     This Decree will remain in effect for two and a half (2.5) years from the Effective Date of this Decree.  The Decree will not expire against any signatory while any enforcement action is pending against that signatory.

43.     The Court will retain jurisdiction over this action for all purposes including, but not limited to, the entering of all orders, judgments, and decrees as necessary to implement the relief provided herein.  Upon signature and approval by the Court, the matter will be closed subject to a motion to reopen by either party.

## VII.    SIGNATURES

44.     Each signatory to this Decree represents that they are fully authorized to execute this Decree and to bind the Parties on whose behalf they sign.  By signing this Decree, each Party acknowledges that it has read and understands the terms of this Decree and agrees to be bound by the terms of this Decree.

[Intentionally left blank]

[signature page to follow]

APPROVED IN FORM AND CONTENT:

For Plaintiff EEOC:

_____

Jeffrey Burstein
Regional Attorney

Nora Curtin
Assistant Regional Attorney

Lindsay Sfekas
Trial Attorney

Daniel Seltzer
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York, 10004
daniel.seltzer@eeoc.gov

For Defendant Maximum Security NYC, Inc.:

_____

Ray Cortes

SO ORDERED this _____ day of _____, 2024.

_____

United States District Judge

14

**EXHIBIT A**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

# <u>NOTICE TO ALL EMPLOYEES OF</u><br><u>LAWSUIT & SETTLEMENT</u>

This Notice is being posted pursuant to a Consent Decree entered in resolution of a lawsuit brought by the U.S. Equal Employment Opportunity Commission ("EEOC") against Maximum Security NYC, Inc. ("Defendant") in federal court in the Eastern District of New York. In its lawsuit, the EEOC alleged that Maximum Security discriminated on the basis of disability and age when it provided a Fire Safety Director inferior job assignments due to his disability and age, made disparaging comments about his disability and age, and ultimately terminated his employment. Maximum Security denies the allegations.

Federal law prohibits employers from discriminating against applicants and employees based on national origin, religion, race, color, sex, age, disability, or genetic information. Defendant, and its managers, officers, and agents, will support and comply with Federal law prohibiting discrimination against any employee or applicant for employment because of an individual's age or disability with respect to job assignments, termination, and other terms and conditions of employment.

Pursuant to the Consent Decree, Defendant:

1. Is enjoined from engaging in disability- or age-related discrimination or retaliation against any person who exercises his or her rights under federal anti-discrimination laws;

2. Will create, maintain, and distribute written policies and procedures prohibiting discrimination and enabling employees to file discrimination complaints;

3. Provide training on federal laws prohibiting employment discrimination to management;

4. Will maintain and follow a policy on separately storing confidential medical information about employees and applicants;

5. Permit the EEOC to monitor compliance with the Consent Decree;

6. Provide the EEOC periodic reports on internal complaints of discrimination;

7. Distribute this Notice; and

8. Pay money damages to the employee who was subject to discrimination.

Should you have any complaints or questions regarding employment discrimination, contact the EEOC at:

> Equal Employment Opportunity Commission
> (800) 669-4000
> Website: www.eeoc.gov

Dated:_____

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE ALTERED OR DEFACED BY ANYONE OR COVERED BY ANY OTHER MATERIAL**

This Notice must remain posted for two and a half (2.5) years from the date shown above and must not be altered, defaced, or covered by any other material.  Any questions concerning this Notice or compliance with its provisions may be directed to the U.S. Equal Employment Opportunity Commission at the number listed above.

Exhibit B - Anti-Discrimination Policies and Procedures

**MAXIMUM SECURITY NON DISCRIMINATION, NON HARASSMENT, AND EEO POLICY**

**[INSERT PREFACE TO POLICY REGARDING NO CONTRACTUAL PROMISES]**

## EQUAL OPPORTUNITY EMPLOYER

Maximum Security is committed to the principles of equal employment opportunity and to compliance with all federal, state and local laws concerning discrimination in employment.  To this end, Maximum Security ensures equal opportunity to all employees and applicants regardless of their race, color, creed, religion, national origin, ancestry, citizenship status, age, sex or gender (including pregnancy, childbirth and related medical conditions), gender identity or expression (including transgender status), sexual orientation, marital status, disability, veteran status, genetic information or any other classification protected by applicable federal, state, or local law.

Our Company will comply with all federal, state, and other applicable laws requiring reasonable accommodation of a qualified individual with a disability, affected by pregnancy or affected by medical conditions related to childbirth, and of religion.

Management will make reasonable accommodations for known physical or mental impairments or for known limitations related to pregnancy, childbirth, or related medical conditions in accordance with applicable law.  If you have a need for accommodation due to a disability or related to childbirth or pregnancy, provide Management with a description of the suggested accommodation (preferably in writing) so that it can be considered.  The Company may request that you obtain additional information from your physician or other medical or rehabilitation professionals supporting the need for an accommodation.

At an employee's or applicant's request, Management will attempt to provide reasonable accommodations for sincerely held religious beliefs and practices of the employee if to do so does not impose an undue hardship on the Company or interfere with the employee's ability to perform the essential functions of the position.

Employees or applicants needing an accommodation relating to any dress or personal appearance requirements of the Company for religious or medical reasons are encouraged to discuss this with Management.  Employees may be asked to provide appropriate documentation to support the request.

All complaints of discriminatory treatment in violation of this policy or questions or concerns about equal employment opportunities in the workplace should be brought to the attention of Management in writing or, if the complainant prefers, verbally.

## ANTI DISCRIMINATION & ANTI HARASSMENT

It is the Company's policy to prohibit discrimination and/or the harassment of any individual by another person on the basis of race, color, creed, religion, national origin, ancestry, citizenship status, age, sex or gender (including pregnancy, childbirth and related medical conditions), gender identity or expression (including transgender status), sexual orientation, marital status, disability, veteran status, genetic information or any other classification protected by applicable federal, state, or local laws.  Such conduct

will not be tolerated by the Company.

The purpose of this policy and the Sexual Harassment policy below is to teach employees to recognize discrimination, including discrimination due to an individual's intersecting identities, and provide the tools to take action when it occurs.

Discrimination, for purposes of this policy, generally means to treat a person differently, or less favorably, because of that person's race, color, creed, religion, national origin, ancestry, citizenship status, age, sex or gender (including pregnancy, childbirth and related medical conditions), gender identity or expression (including transgender status), sexual orientation, marital status, disability, veteran status, genetic information or any other classification protected by applicable federal, state, or local laws.  Such conduct will not be tolerated by the Company.

Harassment, for purposes of this policy generally is defined as unwelcome verbal, visual or physical conduct that demeans or shows hostility or aversion towards an individual because of these protected characteristics, and that (1) has the purpose or effect of creating an intimidating, hostile or offensive working environment; or (2) has the purpose or effect of unreasonably interfering with an individual's work performance; or (3) otherwise adversely affects an individual's employment opportunities. Harassment can be verbal (including slurs, jokes, insults, epithets, gestures or teasing), visual (including offensive posters, symbols, cartoons, drawings, computer displays, or e-mails) or physical conduct (including physically threatening another, blocking someone's way, etc.) that denigrates or shows hostility or aversion towards an individual because of any protected characteristic.  Such conduct violates this policy, even if it is not unlawful.  Harassment does not need to be severe or pervasive to be illegal.

This policy applies to all employees and applicants for employment as well as to anyone who is (or is employed by) a contractor, subcontractor, vendor, consultant or anyone providing service in the workplace.

If you believe you have been subjected to or if you have witnessed any conduct that may violate this policy, we encourage you to immediately report the matter to Management in writing.  All employees will have access to a complaint form to report harassment or discrimination and file complaints.  Use of this form is not required.  For anyone who would rather make a complaint verbally, or by email, these complaints will be treated with equal priority.  An employee who prefers not to report harassment or discrimination to Management may instead report harassment or discrimination to the New York State Division of Human Rights and/or the United States Equal Employment Opportunity Commission. Complaints may be made to both Management and a government agency.

The Company will conduct a prompt and thorough investigation into the facts and circumstances of the harassment or discrimination complaint.  Investigations will be kept confidential to the extent practicable. All employees are encouraged to cooperate with any investigation.

If you are unsure with whom to raise a complaint about harassment or discrimination, or if you have not received a satisfactory response within ten (10) days after submitting a complaint about what you believe to be harassment or discrimination to Management, please immediately contact Ray Cortes and/or Dan Kinckiner.  While we take all allegations of illegal harassment, discrimination, and retaliation seriously, employees should be aware that anonymous complaints may impede the investigative process.

All supervisors and managers who receive a complaint or information about harassment or discrimination

or who observe harassment or discrimination are required to report such information to Ray Cortes and/or Dan Kinckiner. Supervisors and managers must report a complaint even if the person making the claim wishes it to remain confidential.

The Company considers any violation of this policy to be a form of misconduct. Anybody, regardless of position or title, whom the Company determines has engaged in unlawful harassment or discrimination, will be subject to prompt, appropriate corrective action, up to and including termination.

Discrimination of any kind, including harassment, is a violation of our policies and is unlawful. Those discriminating or harassing may also be individually subject to liability and employers or supervisors who fail to report or act on harassment may be liable for aiding and abetting such behavior. Employees at every level who engage in harassment or discrimination, including management and supervisors who engage in harassment or discrimination or who allow such behavior to continue, will be subject to corrective action, up to and including termination.

In addition, the Company will not allow any form of retaliation against individuals who report or complain about harassment or discrimination, who cooperate in an investigation, or who otherwise participate in any proceeding under the law. No one should fear reporting discrimination or harassment if they believe it has occurred. So long as a person reasonably believes that they have witnessed or experienced such behavior, they are protected from retaliation. Retaliation means adverse conduct taken because an individual reported an actual or perceived violation of this policy, opposed practices prohibited by this policy, or participated in the reporting and investigation process. Such retaliatory conduct is a separate violation of this policy and applicable law and is subject to prompt, appropriate corrective action, up to and including termination. Anyone who believes they have been a target of retaliation may also seek relief from government agencies as explained below in this policy.

## POLICY AGAINST SEXUAL HARASSMENT

As part of its commitment to ensuring a workplace that is free of unlawful discrimination or harassment, Maximum Security prohibits sexual harassment. This prohibition includes inappropriate conduct by any executive, manager, supervisor, employee, client, third-party contractor, vendor or visitor, based on sex or gender (including pregnancy, childbirth and related medical conditions), gender identity or gender expression (including transgender status), and/or sexual orientation. Such conduct will not be tolerated by the Company.

Sexual harassment is a form of gender-based discrimination that is unlawful under federal, state, and (where applicable) local law. Sexual harassment includes harassment on the basis of sex, sexual orientation, self-identified or perceived sex, gender expression, gender identity, and the status of being transgender. Sexual harassment is not limited to sexual contact, touching, or expressions of a sexually suggestive nature. Sexual harassment includes all forms of gender discrimination including gender role stereotyping and treating employees differently because of their gender.

Understanding gender diversity is essential to recognizing sexual harassment because discrimination based on sex stereotypes, gender expression, and perceived identity are all forms of sexual harassment. The gender spectrum is nuanced, but the three most common ways people identify are cisgender, transgender, and non-binary. A cisgender person is someone whose gender aligns with the sex they were assigned at birth. Generally, this gender will align with the binary of male or female. A transgender

person is someone whose gender is different than the sex they were assigned at birth. A non-binary person does not identify exclusively as a man or a woman. They might identify as both, somewhere in between, or completely outside the gender binary. Some may identify as transgender, but not all do. Respecting an individual's gender identity is a necessary first step in establishing a safe workplace.

Sexual harassment is unlawful when it subjects an individual to inferior terms, conditions, or privileges of employment. Harassment does not need to be severe or pervasive to be illegal. It can be any harassing behavior that rises above petty slights or trivial inconveniences. Every instance of harassment is unique to those experiencing it, and there is no single boundary between petty slights and harassing behavior. However, the New York Human Rights Law specifies that whether harassing conduct is considered petty or trivial is to be viewed from the standpoint of a reasonable victim of discrimination with the same protected characteristics. Generally, any behavior in which an employee or covered individual is treated worse because of a protected characteristic (including gender (perceived or actual), sexual orientation, or gender expression) is considered a violation of this policy. The intent of the behavior, for example, making a joke, does not neutralize a discrimination or harassment claim. Not intending to harass is not a defense. The impact of the behavior on a person is what counts.

Sexual harassment includes any unwelcome conduct which is either directed at an individual because of that individual's gender identity or expression (perceived or actual), or is of a sexual nature when:

•       The purpose or effect of this behavior unreasonably interferes with an individual's work performance or creates an intimidating, hostile or offensive work environment. The impacted person does not need to be the intended target of the sexual harassment;

•       Employment depends implicitly or explicitly on accepting such unwelcome behavior; or

•       Decisions regarding an individual's employment are based on an individual's acceptance to or rejection of such behavior. Such decisions can include what shifts and how many hours an employee might work, project assignments, as well as salary and promotion decisions.

There are two main types of sexual harassment:

•       Behaviors that contribute to a hostile work environment include, but are not limited to, words, signs, jokes, pranks, intimidation, or physical violence which are of a sexual nature, or which are directed at an individual because of that individual's sex, gender identity, or gender expression. Sexual harassment also consists of any unwanted verbal or physical advances, sexually explicit derogatory, or discriminatory statements which an employee finds offensive or objectionable, causes an employee discomfort or humiliation, or interferes with the employee's job performance.

•       Sexual harassment also occurs when a person in authority tries to trade job benefits for sexual favors. This can include hiring, promotion, continued employment or any other terms, conditions, or privileges of employment. This is also called quid pro quo harassment.

Any employee who feels harassed is encouraged to report the behavior so that any violation of this policy can be corrected promptly. Any harassing conduct on the basis of sex or gender (including pregnancy, childbirth and related medical conditions), gender identity or gender expression (including transgender status), and/or sexual orientation, even a single incident, can be discrimination and is covered by this policy.

Sexual harassment might include a range of subtle and not so subtle behaviors and might involve individuals of the same or different gender.  Although it is **not possible to list all examples** of conduct which constitute sexual harassment, **the following are some examples** of conduct that may constitute sexual harassment and which are strictly prohibited.  Harassment does not need to be severe or pervasive to be illegal.  Any employee who believes they have experienced sexual harassment, even if it does not appear on this list, should feel encouraged to report it.

- Physical acts of a sexual nature, such as:

  - Touching, pinching, patting, kissing, hugging, grabbing, brushing against another employee's body, or poking another employee's body; or

  - Rape, sexual battery, molestation, or attempts to commit these assaults, which may be considered criminal conduct outside the scope of this policy (please contact local law enforcement if you wish to pursue criminal charges).

- Unwanted sexual comments, advances, or propositions, such as:

  - Requests for sexual favors accompanied by implied or overt threats concerning the target's job performance evaluation, a promotion, or other job benefits;

  - Subtle or obvious pressure for unwelcome sexual activities; or

  - Repeated requests for dates or romantic gestures, including gift-giving.

- Sexually oriented gestures, noises, remarks or jokes, or questions and comments about a person's sexuality, sexual experience, or romantic history which create a hostile work environment.  This is not limited to interactions in person.  Remarks made over virtual platforms and in messaging apps when employees are working remotely can create a similarly hostile work environment.

- Sex stereotyping, which occurs when someone's conduct or personality traits are judged based on other people's ideas or perceptions about how individuals of a particular sex should act or look:

  - Remarks regarding an employee's gender expression, such as wearing a garment typically associated with a different gender identity; or

  - Asking employees to take on traditionally gendered roles, such as asking a woman to serve meeting refreshments when it is not part of, or appropriate to, her job duties.

- Sexual or discriminatory displays or publications anywhere in the workplace, such as:

  - Displaying pictures, posters, calendars, graffiti, objects, promotional material, reading materials, or other materials that are sexually demeaning or pornographic. This includes such sexual displays on workplace computers or cell phones and sharing such displays

while in the workplace;

- o This also extends to the virtual or remote workspace and can include having such materials visible in the background of one's home during a virtual meeting.

- Hostile actions taken against an individual because of that individual's sex, sexual orientation, gender identity, or gender expression, such as:

  - o Interfering with, destroying, or damaging a person's workstation, tools or equipment, or otherwise interfering with the individual's ability to perform the job;

  - o Sabotaging an individual's work;

  - o Bullying, yelling, or name-calling;

  - o Intentional misuse of an individual's preferred pronouns; or

  - o Creating different expectations for individuals based on their perceived identities:

    - ▪ Dress codes that place more emphasis on women's attire;

    - ▪ Leaving parents/caregivers out of meetings.

Sexual harassment can occur between any individuals, regardless of their sex or gender. Harassment does not have to be between members of the opposite sex or gender. New York Law protects employees and all covered individuals described earlier in this policy. **Harassers can be anyone in the workplace**. A supervisor, a supervisee, or a coworker can all be harassers. Anyone else in the workplace can also be harassers including an independent contractor, contract worker, vendor, client, customer, or visitor.

Sexual harassment does not happen in a vacuum and discrimination experienced by an employee can be impacted by biases and identities beyond an individual's gender. For example:

- Placing different demands or expectations on black women employees than white women employees can be both racial and gender discrimination;

- An individual's immigration status may lead to perceptions of vulnerability and increased concerns around illegal retaliation for reporting sexual harassment; or

- Past experiences as a survivor of domestic or sexual violence may lead an individual to feel re-traumatized by someone's behaviors in the workplace.

Unlawful sexual harassment is not limited to the physical workplace itself. It can occur while employees are traveling for business or at employer sponsored event. Calls, texts, emails, and social media usage by employees can constitute unlawful workplace harassment, even if they occur away from the workplace premises, on personal devices, or during non-work hours.

If you believe you have been subjected to or if you have witnessed any conduct that may violate this policy, you should immediately report the matter to your Management. The Company will conduct a prompt investigation. Investigations will be kept confidential to the extent practicable.

Reports of sexual harassment may be made verbally or in writing. A written complaint form is attached to this policy if an employee would like to use it, but the complaint form is not required. Employees who are reporting sexual harassment on behalf of other employees may use the complaint form and should note that it is on another employee's behalf. A verbal or otherwise written complaint (such as an email) on behalf of oneself or another employee is also acceptable.

All complaints or information about sexual harassment will be investigated, whether that information was reported in verbal or written form. An investigation of any complaint, information, or knowledge of suspected sexual harassment will be prompt, thorough, and started and completed as soon as possible. The investigation will be kept confidential to the extent possible.

Any employee may be required to cooperate as needed in an investigation of suspected sexual harassment. The Company will take disciplinary action against anyone engaging in retaliation against employees who file complaints, support another's complaint, or participate in harassment investigations.

While the process may vary from case to case, investigations will be done in accordance with the following steps. Upon receipt of a complaint, Management:

1.      Will conduct a prompt review of the allegations, assess the appropriate scope of the investigation, and take any interim actions (for example, instructing the individual(s) about whom the complaint was made to refrain from communications with the individual(s) who reported the harassment), as appropriate. If a complaint is verbal, request that the individual completes the complaint form in writing. If the person reporting prefers not to fill out the form, Management will prepare a complaint form or equivalent documentation based on the verbal reporting;

2.      Will take steps to obtain, review, and preserve documents sufficient to assess the allegations, including documents, emails, or phone records that may be relevant to the investigation;

3.      Will seek to interview all parties involved, including any relevant witnesses;

4.      Will create a written documentation of the investigation (such as a letter, memo, or email), which contains the following:

       a.      A list of all documents reviewed, along with a detailed summary of relevant documents;

       b.      A list of names of those interviewed, along with a detailed summary of their statements;

       c.      A timeline of events;

d.     A summary of any prior relevant incidents disclosed in the investigation, reported or unreported; and

e.     The basis for the decision and final resolution of the complaint, together with any corrective action(s).

5.     Will keep the written documentation and associated documents in a secure and confidential location;

6.     Will promptly notify the individual(s) who reported the harassment and the individual(s) about whom the complaint was made that the investigation has been completed and implement any corrective actions identified in the written document; and

7.     Will inform the individual(s) who reported of the right to file a complaint or charge externally as outlined below.

Supervisors and managers have a responsibility to prevent sexual harassment and discrimination.  All supervisors and managers who receive a complaint or information about suspected sexual harassment, observe what may be sexually harassing or discriminatory behavior, or for any reason suspect that sexual harassment or discrimination is occurring, are required to report such suspected sexual harassment to Ray Cortes and/or Dan Kinckiner.

Supervisors and managers can be disciplined if they engage in sexually harassing or discriminatory behavior themselves.  Supervisors and managers can also be disciplined for failing to report suspected sexual harassment or allowing sexual harassment to continue after they know about it.

Supervisors and managers will also be subject to discipline for engaging in any retaliation.

While supervisors and managers have a responsibility to report harassment and discrimination, supervisors and managers must be mindful of the impact that harassment and a subsequent investigation has on victims.  Being identified as a possible victim of harassment and questioned about harassment and discrimination can be intimidating, uncomfortable, and re-traumatizing for individuals.  Supervisors and managers should work to ensure the workplace is safe and free from retaliation.

The Company considers any violation of this policy to be a form of misconduct.  Anybody, regardless of position or title, whom the Company determines has engaged in sexual harassment of any kind in violation of this policy, will be subject to prompt, appropriate corrective action, up to and including termination.

Any employee witnessing harassment as a bystander is encouraged to report it.  A supervisor or manager that is a bystander to harassment is **required** to report it.  There are five standard methods of bystander intervention that can be used when anyone witnesses harassment or discrimination and wants to help.

1. A bystander can interrupt the harassment by engaging with the individual being harassed and distracting them from the harassing behavior;

2. A bystander who feels unsafe interrupting on their own can ask a third party to help intervene in the harassment;

3. A bystander can record or take notes on the harassment incident to benefit a future investigation;

4. A bystander might check in with the person who has been harassed after the incident, see how they are feeling and let them know the behavior was not ok; and

5. If a bystander feels safe, they can confront the harassers and name the behavior as inappropriate. When confronting harassment, physically assaulting an individual is never an appropriate response.

Though not exhaustive, and dependent on the circumstances, the guidelines above can serve as a brief guide of how to react when witnessing harassment in the workplace.

In addition, the Company will not allow any form of retaliation against individuals who report or complain about sexual harassment, who cooperate in the investigation, or who otherwise participate in any proceeding under the law.  Retaliation is unlawful and is any action by an employer or supervisor that punishes an individual upon learning of a harassment claim, that seeks to discourage a worker from making a formal complaint or supporting a sexual harassment or discrimination claim, or that punishes those who have come forward.  These actions need not be job-related or occur in the workplace to constitute unlawful retaliation.  For example, threats of physical violence outside of work hours or disparaging someone on social media would be covered as retaliation under this policy.

Examples of retaliation may include, but are not limited to:

• Demotion, termination, denying accommodations, reduced hours, or the assignment of less desirable shifts;

• Publicly releasing personnel files;

• Refusing to provide a reference or providing an unwarranted negative reference;

• Labeling an employee as "difficult" and excluding them from projects to avoid "drama";

• Undermining an individual's immigration status; or

• Reducing work responsibilities, passing over for a promotion, or moving an individual's desk to a less desirable office location.

Such retaliation is unlawful under federal, state, and (where applicable) local law.  The New York State Human Rights Law protects any individual who has engaged in "protected activity."  Protected activity occurs when a person has:

• Made a complaint of sexual harassment or discrimination, either internally or with any government agency;

• Testified or assisted in a proceeding involving sexual harassment or discrimination under the Human Rights Law or any other anti-discrimination law;

• Opposed sexual harassment or discrimination by making a verbal or informal complaint to management, or by simply informing a supervisor or manager of suspected harassment;

• Reported that another employee has been sexually harassed or discriminated against; or

• Encouraged a fellow employee to report harassment.

Even if the alleged harassment does not turn out to rise to the level of a violation of law, the individual is protected from retaliation if the person had a good faith belief that the practices were unlawful. However, the retaliation provision is not intended to protect persons making intentionally false charges of harassment.

The internal process outlined in the policy above is one way for employees to report sexual harassment. Employees may also choose to pursue legal remedies with the following governmental entities.

New York State Division of Human Rights:

The New York State Human Rights Law ("HRL"), N.Y. Executive Law, art. 15, § 290 *et seq.*, applies to all employers in New York State and protects employees, regardless of immigration status. A complaint alleging violation of the Human Rights Law may be filed either with the New York State Division of Human Rights ("DHR") or in New York State Supreme Court.

Complaints of sexual harassment filed with DHR may be submitted any time within three years of the harassment. If an individual does not file a complaint with DHR, they can bring a lawsuit directly in state court under the Human Rights Law, within three years of the alleged sexual harassment. An individual may not file with DHR if they have already filed a HRL complaint in state court. You do not need an attorney to file a complaint with DHR, and there is no cost to file with DHR.

Complaining internally to the Company does not extend your time to file with DHR or in court. The three years are counted from the date of the most recent incident of harassment.

DHR will investigate your complaint and determine whether there is probable cause to believe that sexual harassment has occurred. Probable cause cases receive a public hearing before an administrative law judge. If sexual harassment is found at the hearing, DHR has the power to award relief. Relief varies but it may include requiring your employer to take action to stop the harassment, or repair the damage caused by the harassment, including paying of monetary damages, punitive damages, attorney's fees, and civil fines.

DHR's main office contact information is: NYS Division of Human Rights, One Fordham Plaza, Fourth Floor, Bronx, New York 10458. You may call (718) 741-8400 or visit: www.dhr.ny.gov.

Go to dhr.ny.gov/complaint for more information about filing a complaint with DHR. The website has a

digital complaint process that can be completed on your computer or mobile device from start to finish. The website has a complaint form that can be downloaded, filled out, and mailed to DHR as well as a form that can be submitted online.  The website also contains contact information for DHR's regional offices across New York State.

Call the DHR sexual harassment hotline at 1(800) HARASS3 for more information about filing a sexual harassment complaint.  This hotline can also provide you with a referral to a volunteer attorney experienced in sexual harassment matters who can provide you with limited free assistance and counsel over the phone.

The United States Equal Employment Opportunity Commission:

The United States Equal Employment Opportunity Commission ("EEOC") enforces federal anti-discrimination laws, including Title VII of the 1964 federal Civil Rights Act, 42 U.S.C. § 2000e *et seq*. An individual can file a complaint with the EEOC anytime within 300 days from the most recent incident of harassment.  There is no cost to file a complaint with the EEOC.  The EEOC will investigate the complaint and determine whether there is reasonable cause to believe that discrimination has occurred.  If the EEOC determines that the law may have been violated, the EEOC will try to reach a voluntary settlement with the employer.  If the EEOC cannot reach a settlement, the EEOC (or the Department of Justice in certain cases) will decide whether to file a lawsuit.  The EEOC will issue a Notice of Right to Sue permitting workers to file a lawsuit in federal court if the EEOC closes the charge, is unable to determine if federal employment discrimination laws may have been violated, or believes that unlawful discrimination occurred but does not file a lawsuit.

Individuals may obtain relief in mediation, settlement or conciliation. In addition, federal courts may award remedies if discrimination is found to have occurred. In general, private employers must have at least 15 employees to come within the jurisdiction of the EEOC.

An employee alleging discrimination at work can file a "Charge of Discrimination." The EEOC has district, area, and field offices where complaints can be filed. Contact the EEOC by calling 1-800-669-4000 (TTY: 1-800-669-6820), visiting their website at www.eeoc.gov or via email at info@eeoc.gov.

If an individual filed an administrative complaint with the New York State Division of Human Rights, DHR will automatically file the complaint with the EEOC to preserve the right to proceed in federal court.

Local Protections:

Many localities enforce laws protecting individuals from sexual harassment and discrimination.  An individual should contact the county, city, or town in which they live to find out if such a law exists.  For example, employees who work in New York City may file complaints of sexual harassment or discrimination with the New York City Commission on Human Rights.  Contact their main office at Law Enforcement Bureau of the NYC Commission on Human Rights, 22 Reade Street, 1st Floor, New York, New York; call 311 or (212) 306-7450; or visit www.nyc.gov/html/cchr/html/home/home.shtml.

Contact the Local Police Department:

If the harassment involves unwanted physical touching, coerced physical confinement, or coerced sex acts, the conduct may constitute a crime.  Those wishing to pursue criminal charges are encouraged to

contact their local police department.

## EMPLOYEE MEDICAL RECORDS SEGREGATION POLICY

Medical records contain personal details concerning the lives and health of employees.  Maximum Security keeps employees' medical information confidential, storing that information in secure files separate and apart from an employee's personnel file.

Due to the substantial personal privacy interests involved, Maximum Security's examination and use of an employee's medical information will be limited to only that information needed to accomplish the purpose for access.  Personally identifiable employee medical information may only be disclosed to others for purposes allowed under federal, state, or local law.

**[APPEND COMPLAINT FORM TO BACK OF POLICY]**

**Exhibit C- Memorandum**

[ON MAXIMUM SECURITY LETTERHEAD]

**<u>MEMORANDUM</u>**

To:  Maximum Security Employees

From:  Ray Cortes and Dan Kinckiner on behalf of Maximum Security

Dated:  _____, 2024

Re:  Maximum Security's Commitment to Anti-Discrimination[1]

Maximum Security is committed to equal employment and compliance with all federal, state, and local laws concerning discrimination in employment, including laws pertaining to discrimination on the basis of disability and age.  The Company's policy is to prohibit discrimination or the harassment of any person by another person on the basis of race, color, creed, religion, national origin, ancestry, citizenship status, age, sex or gender (including pregnancy, childbirth and related medical conditions), gender identity or expression (including transgender status), sexual orientation, marital status, disability, veteran status, genetic information or any other classification protected by applicable federal, state, or local law. If you believe you have been subjected to or have witnessed conduct that may violate this policy, we encourage you to immediately report the matter to Management in writing.  The Company will conduct a prompt and thorough investigation.  To the extent practicable, any information obtained during the investigation will be kept confidential.  All employees are encouraged to cooperate with any investigation.  While we take all allegations of illegal harassment, discrimination, and retaliation seriously, employees should be aware that anonymous complaints impede the investigative process.

In addition, the Company will not allow any form of retaliation against individuals who, in good faith, report harassment or discrimination, who cooperate in the investigation, or who otherwise participate in any proceeding under the law. Such retaliatory conduct is a separate violation of this policy and applicable law.

---

[1] Neither this memo nor any Company policy referenced is a contract, expressed or implied, guaranteeing employment for any specific duration nor are they intended to create any contractual rights whatsoever.  Your employment with Maximum Security remains "at will", meaning you have the right to terminate your employment at the Company at any time, for any reason, with or without cause or prior notice.  No Company representative is authorized to provide any employee, individually or collectively, with an employment contract or special arrangement concerning the terms or conditions of employment unless in writing and signed by Ray Cortes or Dan Kinckiner.

29